**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Precious T., on behalf of T.D.B..[1],
                       **Plaintiff,**

v.

                                           **20-CV-206-HKS**

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

_____


**DECISION AND ORDER**

        Plaintiff, Precious T., brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied the application for social security income ("SSI") that she filed on behalf of her son, T.D.B., under Title XVI of the Act.  Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 16.


        Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 12, 14.  For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED and Defendant's Motion for Judgment on the Pleadings (Dkt. No. 14) is GRANTED.

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Decision and Order will identify plaintiff by first name and last initial.

**<u>BACKGROUND</u>**

On May 12, 2016, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") on behalf of T.D.B., who was a minor child under 18 years at that time, alleging disability beginning on April 1, 2016, due to: attention deficit hyperactivity disorder ("ADHD"), asthma, and low vision in right eye. Tr.[2] 120-25, 160. On December 1, 2016, Plaintiff's claims were denied by the SSA and he requested review. Tr. 44-64. On November 8, 2018, Plaintiff and T.D.B. appeared with an attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Timothy McGuan ("the ALJ"). Tr. 30-43. During the hearing, T.D.B. testified through his attorney that although he had attained the age of 18, he did not wish to pursue SSI benefits as an adult claimant. Tr. 33. Accordingly, the ALJ found that the period at issue was a closed period from May 12, 2016 to January 7, 2018, before T.D.B. turned 18. *Id.* On December 11, 2018, the ALJ issued a decision finding T.D.B. was not disabled within the meaning of the Act from May 12, 2016 to January 7, 2018. Tr. 9-29. Plaintiff timely requested review of the ALJ's decision on behalf of T.D.B., which the Appeals Council denied on December 18, 2019. Tr. 1-6. Thereafter, Plaintiff commenced this action on behalf of T.D.B. seeking review of the Commissioner's final decision. Dkt. No. 1.

---

[2] References to "Tr." are to the administrative record in this matter. Dkt. No. 4.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.  Disability Determination for Children

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Act if he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."  In denying the application, the ALJ evaluated the claim under the SSA's three-step evaluation process to determine whether an individual under the age of 18 is disabled.  *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), defined as work activity that is both substantial and gainful.  *Id.* § 416.972.  "Substantial work activity" involves significant physical or mental activities.  *Id.* § 416.972(a).  "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized.  *Id.* § 416.972(b).  If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience.  *Id.* at § 416.924(b).  If the claimant is not engaged in SGA, the ALJ proceeds to the next step.  *Id.*

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe."  Id. at § 416.924(a).  For a claimant under the age of 18, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations.  Id. § 416.924(c).  If the claimant has a severe impairment, the ALJ proceeds to the third step; if not, the claimant is disabled.  Id. § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings.  Id. § 416.924(d).  If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled; if not, then the claimant is not disabled.  Id. § 416.294(d).

To determine whether impairments meet or medically equal one in the listings, the ALJ compares the limitations to explicit criteria in the listings.  20 C.F.R. § 416.925.

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. Id. § 416.926a(b)(1).  That assessment compares how the child performs in each of these domains with the typical functioning capabilities of a child of the same age without impairment.  Id. § 416.926a(b).  The child's impairment functionally equals a listing if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain.  Id. § 416.926a(d).  In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all

impairments, including impairments that have been deemed not severe, and their cumulative effects.  Id. §§416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(2)(i).  A "marked" limitation is "more than moderate" but "less than extreme."  Id.  On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the average and a level of day-to-day functioning consistent with that score.  Id. § 416.926a(e)(2)(i), § 416.926a(e)(2)(iii).

An "extreme" limitation results when impairments "interfere [ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id. § 416.926a(e)(3)(i).  An "extreme" limitation is one that is "more than marked."  Id.  The ALJ will find a limitation is "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the average and day-to-day functioning consistent with that score.  *Id*. § 416.926a(e)(3)(iii).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits on behalf of T.D.B. under the process described above.  As an initial matter, the ALJ observed that

although T.D.B. was under the age of 18 when the application was filed on May 12, 2016, he had attained the age of 18 on January 8, 2000, before the ALJ issued the decision—but T.D.B. did not wish to pursue benefits as an adult.  Tr. 15.  Therefore, the ALJ evaluated whether T.D.B. was disabled under the Act for the closed period before he turned 18, from May 12, 2016, through January 7, 2018.  *Id.*

At step one, the ALJ found T.D.B. had not engaged in substantial gainful activity since May 12, 2016, the date the application was filed.  *Id.*  At step two, the ALJ found T.D.B. has the following severe impairment:  attention deficit hyperactivity disorder ("ADHD").  *Id.*  Although the ALJ found the impairment to be severe, at step three, he determined the impairment did not meet, medically equal, or functionally equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 16.  The ALJ considered listing 112.11 Neurodevelopmental Disorder and determined that "[a]lthough diagnosed with ADHD, the record does not support the presence of an extreme limitation of one or marked limitation of two of the areas of mental functioning pursuant to the 'paragraph B' criteria."  *Id.*

The ALJ found less than marked limitations in the domains of acquiring and using information; attending and completing tasks; and interacting and relating with others.  Tr. 20-22.  The ALJ found no limitation in the domains of caring for self, moving about and manipulating objects, and health and physical well-being.  Tr. 23-24.

II.     **Analysis**

Plaintiff, on behalf of T.D.B., argues that remand is required for further administrative proceedings where the ALJ failed to discuss T.D.B.'s intellectual disorder and failed to consider whether T.D.B. met or medically equaled Listing 112.05(B) Intellectual Disorder.  Dkt. No. 12 at 10.  The Commissioner contends that the ALJ did not discuss an intellectual disorder because it was not a medically determinable impairment and contends the ALJ's decision should be affirmed because it is supported by substantial evidence.  Dkt. No. 14 at 10.  This Court agrees with the Commissioner that the ALJ's decision is supported by substantial evidence and should be affirmed for the reasons that follow.

Plaintiff contends the ALJ erred at step two of the sequential evaluation by failing to consider T.D.B.'s intellectual disorder.  Dkt. No. 12 at 11.  Plaintiff bears the burden of establishing that T.D.B. suffers from a medically determinable impairment, that "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 416.921.  The Second Circuit has strongly cautioned that the severity standard at step two is to be applied "solely to screen out *de minimus* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citation omitted).  "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe."  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quotations omitted).  Moreover, "[w]here an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ

identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." *Calixte v. Colvin*, 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016).  An ALJ's decision at step two, like all of the ALJ's determinations, must be "supported by 'substantial evidence' in the record as a whole." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *see Guerra v. Comm'r of Soc. Sec.*, 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018) ("[a] step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe.").

Plaintiff argues that the ALJ ignored medical evidence from Gregory Fabiano, Ph.D ("Dr. Fabiano"), who performed a child intelligence evaluation and child psychiatric evaluation of T.D.B. on November 8, 2016.  Tr. 260-270.  Dr. Fabiano diagnosed T.D.B. with: "mild" intellectual disability, unspecified attention deficit hyperactivity disorder, oppositional defiant disorder, and unspecified depressive disorder. Tr. 264.

Although the ALJ did not discuss or evaluate an intellectual disability at step two, the ALJ found T.D.B.'s ADHD to be a severe impairment and continued with the disability analysis.  Tr. 15.

To determine whether impairments meet or medically equal one in the listings, the ALJ compares the limitations to explicit criteria in the listings.  20 C.F.R. § 416.925.   In determining whether impairments are "marked" or "extreme," the ALJ

considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects.    Id.  §§416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

The ALJ considered listing 112.11 Neurodevelopmental Disorder and determined that "[a]lthough diagnosed with ADHD, the record does not support the presence of an extreme limitation of one or marked limitation of two of the areas of mental functioning pursuant to the 'paragraph B' criteria."  *Id.*

Specifically, the ALJ found less than marked limitations in the domains of acquiring and using information; attending and completing tasks; and interacting and relating with others.  Tr. 20-22.  The ALJ found no limitation in the domains of caring for self, moving about and manipulating objects, and health and physical well-being.  Tr. 23-24.

Plaintiff argues that remand is warranted for the ALJ to specifically consider Listing 112.05 Intellectual Disorder, given Dr. Fabiano's diagnosis intellectual disability for T.D.B.  Dkt. No. 12 at 13.

Listing 112.05 Intellectual Disorder, provides the relevant criteria for determining whether a child between ages three and eighteen has an intellectual challenge severe enough to constitute a disability under the Act.  Either one of two sets

of requirements can satisfy that listing.  One set, 112.05(B), is satisfied when the

claimant meets two criteria:

    1.  Significantly subaverage general intellectual functioning evidenced by a or b:
        a.  A full scale (or comparable) IQ score of 70 or below on an individually
           administered standardized test of general intelligence; or
        b.  A full scale (or comparable) IQ score of 71-75 accompanied by a
           verbal or performance IQ score (or comparable part score) of 70 or
           below on an individually administered standardized test of general
           intelligence; and

    2.  Significant deficits in adaptive functioning currently manifested by extreme
       limitation of one, or marked limitation of two, of the following areas of mental
       functioning:
        a.  Understand, remember, or apply information; or
        b.  Interact with others;or
        c.  Concentrate, persist or maintain pace; or
        d.  Adapt of manage oneself.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05(B)

        Plaintiff insists that the ALJ's failure to address an intellectual disability at

step two is harmful error because, based on the IQ scores yielded upon examination

with Dr. Fabiano, T.D.B. meets the first prong of Listing 112.05(B); and asserts that "it is

possible" T.D.B. met the second prong of 112.05 (B) because the record supports that

he had at least marked limitations in the areas of understanding, remembering or

applying information and adapting; concentration, persistence or pace; and adapting

and managing himself.  Dkt No. 12 at 18.  However, "it is not enough for Plaintiff to

merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the

record could support [T.D.B.'s] position."  *Gonzalez-Cruz v. Comm'r of Soc. Sec.*, 294 F.

Supp. 3d 164, 187 (W.D.N.Y. 2018) (internal citations and quotation omitted).

Dr. Fabiano administered the WAIS-IV test on T.D.B., yielding the following scores: Verbal Comprehension Index, 76; Perceptual Reasoning Index, 71; Working Memory Index, 69; Processing Speed Index, 68; and full scale IQ, 66. Tr. 262-263.  Dr. Fabiano opined that the full scale IQ score of 66 places T.D.B. in the extremely low range of functioning, suggesting that the tasks required of other children at the same chronological age will be "considerably more difficult" for T.D.B..  Tr. 263.  The doctor also opined that T.D.B. exhibited limitations in adaptive functioning with regard to his ability to complete and engage in household chores and meet expectations within a structured school setting.  *Id.*

Dr. Fabiano issued the following medical source statement:

"The claimant appears to have a moderate limitation in the ability to attend to, follow, and understand age-appropriate directions due to attention difficulties.  The claimant appears to have a moderate limitation in his ability to complete age-appropriate tasks due to attention difficulties and estimated cognitive ability. The claimant appears to have moderate limitations in his ability to adequately maintain appropriate social behavior and interact adequately with adults due to oppositional defiant disorder. The claimant does not appear to have any evidence of limitations in his ability to respond appropriately to changes in the environment, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions, or interact adequately with peers. He appears to have a moderate to marked limitation in the ability to learn in accordance to cognitive functioning due to estimated level of cognitive ability.  The results of the examination appear to be consistent with cognitive and psychiatric problems and this may significantly interfere with the claimant's ability to function on a daily basis."

Tr. 264.  The doctor also observed that T.D.B. was in an inclusion class given his estimated level of cognitive ability and noted that because T.D.B. is in high school and was just recently placed in special education suggests a more intensive educational set of supports is warranted.  *Id.*

12

Within a week of the consultative examination by Dr. Fabiano, Dr. Butensky had reviewed Dr. Fabiano's report and issued an "Electronic Request for Medical Advice".  Tr. 271-272.  Dr. Butensky noted that Plaintiff had alleged T.D.B. suffers from ADHD, asthma, and low vision in the right eye, and that recent IQ testing performed by Dr. Fabiano yielded a full scale IQ of 66 and the doctor diagnosed mild intellectual disability, ADHD, oppositional defiant disorder, and depressive disorder.  Tr. 271.  Dr. Butensky observed T.D.B. had no history of special education (including a prior denial from May 2008).  Tr. 271.  The doctor also observed that Plaintiff had reported to T.D.B.'s primary doctor, Gloria Wang ("Dr. Wang") that he was not in special education, but that she (Plaintiff) had requested that he be evaluated for services due to his ADHD.  Tr. 271.  Here, Dr. Butensky found that the IQ test results yielded from Dr. Fabiano's examination were not credible and lower than earlier IQ examinations performed in 2008, when T.D.B. was not taking medication for his ADHD.  Tr. 271.  Dr. Butensky instructed that school records were necessary to confirm that T.D.B. was receiving special education services since Fall 2016, as Plaintiff reported.  Tr. 271.  Dr. Butensky observed that T.D.B. is not noted to have any developmental delays and if he had, the schools would have identified him as special needs long before high school. Tr. 271.  Lastly, the doctor observed that T.D.B. appears to have ADHD, for which he had only recently begun treatment in July of 2016.  Tr. 271.

On December 1, 2016, Dr. Butensky received and reviewed the 2016-17 IEP and psych evaluation for T.D.B. from Buffalo Public Schools.  Tr. 273-274.  Those records reflect that a WIAS-IV test was administered to T.D.B. on May 31, 2016,

yielding the following results: full scale IQ of 79 (borderline); perceptual reasoning, 79 (borderline); processing speed, 94 (average); verbal comprehension, 81 (low average); and working memory, 80 (low average).  Tr. 240-241.  The doctor noted that T.D.B.'s IQ scores from the school-administered WAIV-IV tests were significantly higher than his IQ scores yielded from the test administered by Dr. Fabiano.  Tr. 273.

The ALJ addressed Dr. Fabiano's opinion, according it "some weight," noting that the WAIS-IV testing that the doctor administered for Plaintiff produced a full-scale IQ score of 66 (extremely low range of functioning) which appeared to be the basis of the doctor's assessment (mild intellectual disability).  Tr. 19.  The ALJ found that the doctor's assessment was not supported by the record evidence.  *Id.*  For example, the ALJ observed that just six months prior, in May 2016, a school psychologist had administered the same WAIS-IV test for Plaintiff, which produced a full-scale IQ score of 79 (borderline).  *Id.*  The ALJ found that Dr. Fabiano's findings appeared to be influenced by the reports of Plaintiff and T.D.B.  Tr. 19.  The ALJ concluded that there was no justification, such as a traumatic head injury or other event, for such a dramatic decrease in a full-scale IQ score.  *Id.*

The ALJ also explained that he relied on the opinion of state-agency reviewing psychologist, C. Butensky, Ph.D. ("Dr. Butensky"), whom he accorded "significant weight."  *Id.*   The ALJ noted that Dr. Butensky had reviewed the entire record as it existed in November and December of 2016, including the intelligence test records from T.D.B.'s high school and concluded the intelligence test scores produced

14

on consultive examination with Dr. Fabiano were not credible.  *Id.*  Dr. Butensky also

observed that Plaintiff's high rate of absenteeism had affected his academic

performance.  *Id.*  Here, Plaintiff argues the ALJ erred in according more weight to Dr.

Butensky over Dr. Fabiano, because Dr. Butensky did not personally examine T.D.B..

Dkt. No. 12 at 16.  However, the Second Circuit has held that the opinion of a non-

examining medical source may override that of an examining source, where, as here,

the opinion is supported by evidence in the record.  *See Camille v. Colvin*, 652 F. App'x

25 (2d Cir 2016).


        The ALJ 's evaluation of the functional domains—specifically acquiring

and using information and attending and completing tasks—also explicitly addressed

the conflicting IQ score results and examined other record evidence from the relevant

period in support of the ALJ's decision not to credit the scores yielded from Dr.

Fabiano's examination.  Tr. 20.  For example, the ALJ referenced medical records from

T.D.B.'s primary care provider, Gloria Wang, M.D., ("Dr. Wang") indicating that T.D.B.'s

grades improved significantly after he began taking Adderall in July 2016.  Tr. 20, 21,

206-236,296-362.  Specifically, in October of 2016, treatment notes documented

improved grades from the sixties to the eighties.  Tr. 310.  In December of 2016,

T.D.B.'s school performance was good and Dr. Wang noted that he wanted to go to

college to open a restaurant.  Tr. 307.  In March of 2017, Dr. Wang noted T.D.B.'s

school problems improved and that he was doing well.  The ALJ also referenced school

records that confirmed T.D.B.'s distractibility and indicated that significant amounts of

school absences (40 days in one year) had affected his ability to perform well in school,

as he had not been exposed to much of the necessary curriculum.  Tr. 21, 249, 275-295.

The ALJ also discussed Plaintiff's own testimony regarding T.D.B., including that T.B.D. had only started receiving special education services during his sophomore year of high school, where he had trouble focusing properly, following directions, and had poor grades in school.  Tr. 16-17.   The ALJ noted Plaintiff' stated that some days T.D.B. missed school due to suspensions and some days he simply did not want to attend school.  Tr. 17.

Although the ALJ did not explicitly explain his conclusion that T.D.B.'s mild intellectual disability was not a severe impairment at step two, he found T.D.B.'s ADHD was a severe impairment and continued with the disability analysis.  Based on further analysis and discussion in the decision as discussed above, this Court is able to glean that the ALJ considered Dr. Fabiano's diagnoses, including mild intellectual disorder, which the ALJ determined was not credible.   The ALJ properly exercised his discretion in weighing the opinion evidence in this case.  It is the ALJ's duty to evaluate conflicts in the evidence.  See 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d at 448 ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.")  Therefore, because the ALJ proceeded with the subsequent steps and considered effects of all alleged impairments, this Court finds that

any error at step two was harmless.  *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 12) is DENIED.  The Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 14) is GRANTED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            September 27, 2021


                                    *S/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**